Michael R. Lozeau (State Bar No. 142893)
Rebecca L. Davis (State Bar No. 271662)
E-mail: michael@lozeaudrury.com
    rebecca@lozeaudrury.com
LOZEAU DRURY LLP
1939 Harrison St., Suite 150
Oakland, CA 94612
Tel: (510) 836-4200
Fax: (510) 836-4205

Attorneys for Plaintiff
COMMUNITIES FOR A BETTER ENVIRONMENT

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITIES FOR A BETTER ENVIRONMENT, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PRAXAIR, INC., a Delaware corporation,<br><br>Defendant. | Case No. 2:19-cv-05270-DSF-JEM<br><br>CONSENT DECREE<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387) |

# CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff Communities for a Better Environment ("Plaintiff" or "CBE") and Defendant Praxair, Inc. ("Defendant" or "Praxair"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties" or "Parties."

**WHEREAS**, CBE is an environmental justice non-profit 501(c)(3) organization organized under the laws of the State of California with a local office in Huntington Park, California;

**WHEREAS**, CBE is dedicated to empowering low-income communities of color that seek a voice in determining the health of their air, water and land;

**WHEREAS**, Praxair is the owner and operator of a bulk atmospheric gas products facility located at 2300 E. Pacific Coast Highway in Wilmington, hereinafter referred to by the Settling Parties as the "Facility";

**WHEREAS**, the Facility falls within Standard Industrial Classification ("SIC") code 2813 (Industrial Gases);

**WHEREAS**, CBE has approximately 6,000 members who live and/or recreate in and around the waters of the State of California;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ and as subsequently amended by Water Quality Order No. 2014-0057-DWQ) (hereinafter the "Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. §§ 1251 *et seq.*;

**WHEREAS**, the Permit includes the following requirements for all permittees,

including Praxair: 1) develop and implement a storm water pollution prevention plan ("SWPPP"); 2) control pollutant discharges using best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT") to prevent or reduce pollutants; 3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP; and 4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards;

**WHEREAS**, on March 18, 2019 CBE served Praxair, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of Los Angeles Regional Water Quality Control Board ("Regional Board"), the U.S. Attorney General, and the Regional Administrator of the EPA (Region 9) with a notice of intent to file suit under Sections 505(a)(1) and (f) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A) ("60-Day Notice Letter"), alleging violations of the Act and the Permit at the Facility;

**WHEREAS**, on June 17, 2019, CBE filed a complaint against Praxair in the United States District Court, Central District Court of California, entitled *Communities for a Better Environment v. Praxair, Inc.* (Case No. 2:19-cv-05270-DSF-JEM); alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Permit at the Facility ("Complaint") based on the 60-Day Notice Letter;

**WHEREAS**, CBE contends in its 60-Day Notice Letter and Complaint that, among other things, Praxair has repeatedly discharged polluted storm water in violation of the Permit and the Clean Water Act;

[PROPOSED] CONSENT DECREE        3        Case No. 2:19-cv-05270-DSF-JEM

**WHEREAS**, Praxair denies all allegations set forth in the 60-Day Notice Letter and Complaint relating to the Facility;

**WHEREAS**, in January 2019, Praxair increased the size of the pump used to convey stormwater from the underground lift station to the cooling tower basin so that it can now process 90 gallons per minute, allowing the pump to handle a greater capacity without stormwater needing to be discharged to the stormwater vault and out to the Dominguez Chanel;

**WHEREAS**, Praxair revised its SWPPP and uploaded it to the State Board via the State Board's Stormwater Multiple Application and Report Tracking System ("SMARTS") on July 3, 2019 and July 29, 2019;

**WHEREAS**, the Settling Parties, through their authorized representatives and without either adjudication of CBE's claims or any admission by Praxair of any alleged violation or other wrongdoing, believe it is in their mutual interest to resolve in full CBE's allegations in the 60-Day Notice Letter and Complaint through settlement and avoid the cost and uncertainties of further litigation;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(l)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

2. Venue is appropriate in the Central District of California pursuant to Section 505(c)(l) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

3. The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(l) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4. Plaintiff has standing to bring this action;

5. The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I. **OBJECTIVES**

6. It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.,* and to resolve those issues alleged by CBE in its Complaint. In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree and to comply with the requirements of the Permit and all applicable provisions of the Clean Water Act at the Facility.

## II. **COMMITMENTS OF PRAXAIR**

7. In order to reduce or prevent pollutants associated with industrial activity from discharging via storm water to the waters of the United States, Praxair shall implement appropriate structural and non-structural BMPs, as required by the Permit, as described more fully below.

8. **Maintenance of Implemented Storm Water Controls.** Praxair agrees that the Facility shall maintain in good working order all storm water collection and management systems currently installed or to be installed pursuant to this Consent Decree, including but not limited to, existing housekeeping measures.

9. **Improvements to Housekeeping Measures at the Facility.** By October 1, 2019, Praxair shall implement the following housekeeping procedures at the Facility:

   a. Praxair shall remove all scrap metal and all other trash or debris from

the concrete pad located in Drainage Area 3. The pad will continue to be used only for storage of items too large to be stored inside existing buildings.

   b. Praxair shall conduct weekly sweeping of all paved surfaces with a Schwartz Super Updraft sweeper or other comparable regenerative sweeper. All sweeping activities shall be recorded in a sweeping log.

10. **Additional Monitoring and Sampling.** Praxair shall conduct the following enhanced monitoring and sampling procedures.

   a. By September 1, 2019, Praxair shall establish a storm water sampling point at discharge location 3, which receives runoff from drainage area 3. Praxair shall revise its sampling protocol to require a sample be taken from this discharge location for Qualifying Stormwater Events ("QSE"), in accordance with the General Permit.

   b. To demonstrate and verify that all storm water from Drainage Area 2 is entering the sanitary sewer system and is not being discharged from the Facility offsite, during each QSE during which samples are collected during the 2019-2020 reporting year, Praxair shall visually monitor the potential for fugitive discharges at the western property line, just north of the cogeneration unit. Praxair shall maintain a written log of its observations and take digital photographs of the Facility at that location.

   c. If Praxair observes any fugitive discharges at the western property line, just north of the cogeneration unit during the monitoring required by paragraph 11b above, within 60 days of the observation, Praxair shall begin a regular practice of deploying temporary berms (Pig

Spillblocker or equivalent) prior to any and every predicted storm event at the Facility, or make permanent improvements, such that storm water in Drainage Area 2 will be prevented from discharging from that area of the Facility and instead will be routed to the storm water lift station.

11. **Amendment of SWPPP.** Within thirty (30) days of the Effective Date, Praxair shall amend the Facility's SWPPP to the extent necessary to incorporate all changes, improvements, and best management practices set forth in or resulting from this Consent Decree. Praxair shall ensure that all maps, tables, and text comply with the requirements of the Permit. A copy of the amended SWPPP shall be provided to CBE within ten (10) business days of completion.

12. **Storm Water Analysis**. Praxair shall analyze each storm water sample taken in accordance with the General Permit and this Consent Decree for, at a minimum, pH, total suspended solids, oil and grease, iron, aluminum, and nitrate + nitrite as nitrogen.

13. **Monitoring Results.** Results from the Facility's sampling and analysis during the term of this Consent Decree shall be provided to CBE within thirty (30) days of receipt of the sampling results by Praxair or its counsel.

14. **Meet and Confer Regarding Exceedance of NALs**. If the Facility's storm water sampling results during the 2019-2020 reporting years indicate that the average of the analytical results for iron or aluminum exceed the annual NALs (as set forth in the General Permit), Praxair agrees to take responsive actions to improve its storm water management practices, including re-evaluating its structural and non-structural BMPs and considering implementing additional BMPs aimed at reducing levels observed in storm water samples.

15. In furtherance of improving its storm water management practices, Praxair shall prepare a written statement ("Action Plan") discussing:

> (1) Any exceedance or exceedances of NALs;
>
> (2) An explanation of the possible cause(s) and/or source(s) of any exceedance; and
>
> (3) Responsive actions to improve its storm water management practices, including modified or additional feasible BMPs to be considered to further reduce the possibility of future exceedance(s), and the proposed dates that such actions will be taken.

Such Action Plan shall be e-mailed and sent via first class mail to the persons listed in paragraph 41, below, not later than July 30, 2020.

16. Upon receipt of the Action Plan, CBE may review and comment on any identified or omitted additional measures. If requested by CBE within thirty (30) days of receipt of such Action Plan, CBE and Praxair shall meet and confer to discuss the contents of the Action Plan and the adequacy of proposed measures to improve the quality of the Facility's storm water to levels at or below the NALs. If requested by CBE within thirty (30) days of receipt of such Action Plan, CBE and Praxair shall meet and confer and conduct a site inspection within sixty (60) days after receipt of CBE's request to discuss the contents of the Action Plan and the adequacy of proposed measures to improve the quality of the Facility's storm water to levels at or below the NALs. If within twenty-one (21) days of the parties meeting and conferring, the parties do not agree on the adequacy of the additional measures set forth in the Action Plan, the Settling Parties shall engage in the dispute resolution procedures pursuant to Paragraphs 26 and 27 below.

17. Any concurrence or failure to object by CBE with regard to the

reasonableness of any additional measures required by this Consent Decree or implemented by Praxair shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's storm water discharges into compliance with applicable water quality criteria or the BAT/BCT requirements set forth in the General Permit.

18. **Provision of Documents and Reports.** During the term of this Consent Decree, Praxair shall provide CBE with a copy of all documents submitted to the Regional Board or the State Board concerning the Facility's storm water discharges, including but not limited to all documents and reports submitted to the Regional Board and/or State Board as required by the Permit. Such documents and reports shall be mailed to CBE contemporaneously with submission to such agency. Alternatively, to the extent that Praxair submits such documents to the Regional Board or State Board via the State Board's Stormwater Multiple Application and Report Tracking System ("SMARTS"), Praxair may satisfy this requirement by providing notice to CBE via e-mail that said results have been uploaded to SMARTS within seven (7) days of uploading said documents.

### III.  MITIGATION PAYMENT, REIMBURSEMENT OF LITIGATION FEES AND COSTS, OVERSIGHT, AND STIPULATED PAYMENTS

19. **Mitigation Payment.** In recognition of the good faith efforts by Praxair to comply with all aspects of the General Permit and the Clean Water Act, and in lieu of payment by Praxair of any penalties, which have been disputed but may have been assessed in this action if it had been adjudicated adverse to Praxair, the Settling Parties agree that Praxair will pay the sum of twenty thousand dollars ($20,000) to the Rose Foundation for Communities and the Environment ("Rose Foundation") for the sole purpose of providing grants to environmentally beneficial projects relating to

water quality improvements in Los Angeles County watersheds. Payment shall be provided to the Rose Foundation as follows: Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607, Attn: Tim Little. Payment shall be made by Praxair to the Rose Foundation within thirty (30) calendar days of the Effective Date. Praxair shall copy CBE with any correspondence and a copy of the check sent to the Rose Foundation. The Rose Foundation shall provide notice to the Settling Parties within thirty (30) days of when the funds are disbursed by the Rose Foundation, setting forth the recipient(s) and purpose(s) of the funds.

20. **Reimbursement of Fees and Costs.** Praxair shall reimburse CBE in the amount of thirty-five thousand dollars ($35,000) to help defray CBE's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Consent Decree, bringing these matters to Praxair's attention, and negotiating a resolution of this action in the public interest. The payment shall be made within thirty (30) days of the Effective Date. The payment shall be made via wire transfer or check, made payable to: "Lozeau Drury LLP" and delivered by overnight delivery, unless payment via wire transfer, to: Lozeau Drury LLP, c/o Rebecca Davis, 1939 Harrisons St, Suite 150, Oakland, CA 94612.

21. **Compliance Monitoring Funds.** As advance reimbursement for CBE's future fees and costs that will be incurred in order for CBE to monitor Praxair's compliance with this Consent Decree and to effectively meet and confer and evaluate storm water monitoring results for the Facility, Praxair agrees to pay CBE the additional sum of three thousand dollars ($3,000). Payment will be made within 30 days of the Effective Date in the manner prescribed for the payment required by paragraph 20.

## VI. COMMITMENT OF COMMUNITIES FOR A BETTER ENVIRONMENT

22. **Submission of Consent Decree to DOJ.** Within three (3) business days of receiving all of the Settling Parties' signatures to this Consent Decree, CBE shall submit this Consent Decree to the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R. §135.5. The agency review period expires forty-five (45) calendar days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review period. If for any reason the DOJ or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

## VII. WAIVER, RELEASES AND COVENANTS NOT TO SUE

23. In consideration of the above, and except as otherwise provided by this Consent Decree, the Parties hereby forever and fully release each other and their respective parents, affiliates, subsidiaries, divisions, insurers, successors, assigns, and current and former employees, attorneys, officers, directors and agents from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the Parties have against each other arising from CBE's allegations and claims as set forth, or as could have been set forth, in the 60-Day Notice Letter and Complaint for any and all violations of the Permit or the Clean Water Act at the

Facility up to and including the Termination Date of this Consent Decree.

24. **No Admission.** The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Nothing in this Consent Decree shall be construed as, and Praxair expressly does not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree constitute or be construed as an admission by Praxair of any fact, finding, conclusion, issue of law, or violation of law. However, this Paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Decree.

## VIII. <u>BREACH OF CONSENT DECREE AND DISPUTE RESOLUTION PROCEDURES</u>

25. **Informal Dispute Resolution**. The Settling Parties will engage in "Informal Dispute Resolution" pursuant to the terms of this paragraph:

> a. If a dispute under this Agreement arises, including whether any Settling Party believes that a violation of the Agreement and the Court's dismissal order has occurred, the Settling Parties will meet and confer (telephonically or in-person) within twenty-one (21) days of receiving written notification of a request for such meeting, unless the parties have already met and conferred on the dispute pursuant to paragraph 17. During the meet and confer proceeding, the Settling Parties will discuss the dispute and make reasonable efforts to devise a mutually acceptable plan, including implementation dates, to resolve the dispute. The Settling Parties may, upon mutual written agreement, extend the time to conduct the meet and confer discussions beyond twenty-one (21) days. If meet and confer discussions fail to resolve the dispute, the Settling Parties shall

request a magistrate judge of this court to conduct a single mediation session pursuant to such procedures as the magistrate judge may require.  The mediation is to be held within 45 days of the conclusion of the meet and confer discussions, or as soon thereafter as the schedule of the magistrate judge will permit.

    b. If any Settling Party fails to meet and confer or mediate within the timeframes set forth in paragraph (a) directly above, or the meet and confer and mediation do not resolve the dispute, after at least twenty-one (21) days have passed after the meet and confer or mediation occurred or should have occurred, either Settling Party may initiate the "Formal Dispute Resolution" procedures outlined directly below.

26. **Formal Dispute Resolution.**  In any action or proceeding which is brought by any Settling Party against any other Settling Party pertaining to, arising out of, or related to the requirements of the Court's dismissal order and this Agreement, the Settling Parties will first utilize the "Informal Dispute Resolution" proceedings set forth in the preceding paragraph and, if not successful, the Settling Parties will utilize the "Formal Dispute Resolution" procedures in this paragraph.  "Formal Dispute Resolution" will be initiated by filing a Motion to Show Cause or other appropriately titled motion ("Motion") in the United States District Court, Central District of California, to determine whether either party is in violation of the Agreement and the Court's dismissal order and, if so, to require the violating party to remedy any violation identified by the District Court within a reasonable time frame.  Litigation costs and fees incurred in the Formal Dispute Resolution process will be awarded in accord with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. § 1365

## IX. MISCELLANEOUS PROVISIONS

27. **Effective Date.** The Effective Date of this Consent Decree shall be upon the subsequent entry of the Consent Decree by the Court.

28. **Term of Consent Decree.** This Consent Decree shall terminate on December 20, 2020, or through the conclusion of any proceeding to enforce this Consent Decree initiated prior to December 20, 2020, or until the completion of any payment or affirmative duty required by this Consent Decree, whichever is the later occurrence.

29. **Execution in Counterparts.** The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

30. **Facsimile Signatures.** The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

31. **Construction.** The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

32. **Authority to Sign.** The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

33. **Integrated Consent Decree.** All Consent Decrees, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

34. **Severability.** In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable

provisions shall not be adversely affected.

35. **Choice of Law.** This Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

36. **Full Settlement.** This Consent Decree constitutes a full and final settlement of this matter. It is expressly understood and agreed that the Consent Decree has been freely and voluntarily entered into by the Parties with and upon advice of counsel.

37. **Negotiated Consent Decree.** The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

38. **Modification of the Consent Decree.** This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Parties.

39. **Assignment.** Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

40. **Mailing of Documents to CBE/Notices/Correspondence.** Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to CBE pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:
>	Communities for a Better Environment
>	Attention: Katherine Hoff

6325 Pacific Blvd., Suite 300
Huntington Park, CA 90255
E-mail: khoff@cbecal.org

With copies sent to:

Rebecca Davis
Lozeau Drury LLP
1939 Harrison St., Suite 150
Oakland, CA 94612
E-mail: rebecca@lozeaudrury.com

Unless requested otherwise by Praxair, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Praxair pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

Michael Th. Bourque
Senior Assistant General Counsel
Global Environmental and Safety
10 Riverview Drive
Danbury CT 06810-5113
E-mail: Michael_Bourque@Praxair.com

With copies sent to:

Gary J. Smith
Beveridge & Diamond, PC
456 Montgomery St., Suite 1800
San Francisco, CA 94104
E-mail: gsmith@bdlaw.com

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an

overnight mail/delivery service. Any changes of address or addressees shall be communicated in the manner described above for giving notices.

41. The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

Date: __October 11__, 2019   COMMUNITIES FOR A BETTER ENVIRONMENT

_____
Darryl Molina Sarmiento
Executive Director

Date: __Oct. 16__, 2019   PRAXAIR, INC.

_____
Armando Botello
Vice President

Approved as to form:

Date: __Oct. 11__, 2019   LOZEAU DRURY LLP

_____
Rebecca L. Davis
Attorneys for Communities for a Better Environment

Date: __10/14__, 2019   BEVERIDGE & DIAMOND P.C.

_____
Gary J. Smith
Attorney for Praxair, Inc.

**IT IS SO ORDERED.**

Date: November 18, 2019

Honorable Dale S. Fischer
United States District Judge